UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HEIDE VELARDE,

           Plaintiff,

     v.

COUNTY OF ALAMEDA, *et al.*,

           Defendants.

Case No. 15-cv-03323-SI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND GRANTING LEAVE TO AMEND**

Re: Dkt. No. 33

Defendants' motion to dismiss the first amended complaint is scheduled for a hearing on April 22, 2016.  Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and hereby VACATES the hearing.  For the reasons set forth below, the Court GRANTS in part and DENIES in part defendants' motion to dismiss the first amended complaint and GRANTS plaintiff leave to amend.  The amended complaint is due by **April 29, 2016**.  **The case management conference scheduled for April 22, 2016 at 2:30 pm remains on calendar.**

## BACKGROUND

This lawsuit arises out of plaintiff's pretrial detention at the Santa Rita Jail from June 16, 2014 until her release on July 2, 2014.  On June 15, 2014, police arrested plaintiff Heide Velarde on a misdemeanor violation of Cal. Penal Code § 245, assault with a deadly weapon.  First Amended Compl. ("FAC") Dkt. No. 25 at ¶ 20.  Velarde was taken to the Fremont Jail before being transported to Santa Rita Jail the next day.  *Id*.  Plaintiff alleges that her cell at Santa Rita Jail was "very cold" and that the "air blowing out of air vents was freezing." *Id*. at ¶ 21.  Plaintiff

alleges that when she was locked in her cell, defendant Doe 5, a deputy, told plaintiff she would not be given a blanket, and that plaintiff then heard defendant Doe 5 state that plaintiff was "being punished." *Id*. Plaintiff also claims that from the time of her arrest until she was fed breakfast the next day, over thirty-six hours passed. *Id*. at ¶¶ 22-23.

Plaintiff alleges that the next day, two deputies spoke with her and told her that she was going to be punished by being placed in solitary confinement,[1] or "the hole," for having made a "scene" at court. *Id*. at ¶ 24. The complaint alleges that "Plaintiff demurred, stating she had never caused a disturbance, but that she had simply requested a different judge as was her right." *Id*.[2] Plaintiff also alleges that a deputy later informed her "that she heard that Plaintiff wrote a book criticizing the Oakland Police Department," and that plaintiff "understood this to mean that anyone who criticized the police or peace officers would be punished, and that the deputies believed plaintiff to be deserving of punishment." *Id*. at ¶ 35. Plaintiff claims that if she "verbally protested or questioned the treatment she received, she was told that she would be further maltreated if she persisted in her verbal protests." *Id*. at ¶ 2.

Plaintiff claims that despite repeated requests, she was never provided with toilet paper while in administrative isolation. *Id*. at ¶ 24. Plaintiff also alleges that she was never given the opportunity to bathe during her detention at Santa Rita Jail. *Id*. at ¶ 29. Plaintiff alleges that she was never afforded the opportunity to launder her clothes because she was never provided a writing instrument with which to fill out a laundry form. *Id*. at ¶ 30. She admits, however, that she never actually verbally or otherwise requested a writing instrument, but plaintiff alleges she did not make these requests because she did not want to anger the deputies. *Id*. According to

---

[1] Defendants state that Santa Rita Jail has "administrative isolation," "which is likely what Plaintiff is referring to in her Complaint as 'solitary confinement.'" Dkt. 33 at 4 n. 2. This order will use the term administrative isolation.

[2] Defendants assert that Judge Saunders of the Alameda County Superior Court ordered that plaintiff be placed into administrative isolation, and therefore that plaintiff's placement in administrative isolation was not punitive. In support of this assertion, defendants seek judicial notice of the Clerks Docket and Minutes dated June 18, 2014. That document states that plaintiff was present for a court appearance on June 18, 2014, and states "Previous order of 6-16-14, defendant held at zero bail, is to not have any communications, no visitors and no telephone calls, (Has not accepted P.O.) remains in effect." Dkt. No. 34-1 at 2. The Court addresses the parties' arguments about plaintiff's placement in administrative segregation *infra*.

United States District Court
Northern District of California

plaintiff, she was never allowed to call her attorney or anyone else during her time in administrative isolation. *Id.* at ¶¶ 32-33.

Plaintiff alleges that on days when she went to court, she was segregated from other detainees. *Id.* at ¶ 34. Upon return from court on July 1, 2014, plaintiff alleges she was subjected to a strip and body cavity search by defendant Jane Doe 6 in a cell with the door open. *Id.* at ¶ 37. Specifically, plaintiff alleges,

> 37 . . . The search was conducted in a cell with the door wide open, which allowed the search to be viewed by all individuals and other guards, male and female, who passed by the open door while the strip search and body cavity search was being conducted.
>
> 38. Plaintiff was ordered to remove all of her clothing and stand there naked. She was required to display and shake each of the pieces of clothing. These articles of clothing were clearly very soiled, given that Plaintiff had had no access to personal sanitation products, including the basics such as toilet paper, and had not been provided an opportunity since her incarceration, to shower or have access to a clean change of clothing.
>
> 39. After removing all of her clothing, she was required to stand there naked and open her mouth and lift her tongue, lift her breasts, run her hands through her hair and shake her head of hair.
>
> 40. Continuing, while standing there naked, Plaintiff was then required to stand on one foot while lifting one leg so defendant Doe 6 could to examine the sole of Plaintiff's foot. This procedure was repeated with the opposite foot. Plaintiff was then forced to turn around, bend over in a squat position and spread her buttock while coughing three times.

*Id.* at ¶¶ 37-40.

On July 2, 2014, plaintiff again went to court, and on that day the charges against her were dismissed. *Id.* at ¶ 42. Plaintiff alleges that she was not immediately released and was instead "kept . . . handcuffed and shackled, and maintained . . . in the isolation cage . . . for an additional 4 or more hours, until Plaintiff was forcibly returned to Santa Rita Jail." *Id.* Upon returning to Santa Rita Jail, plaintiff was subjected to a second strip and body cavity search by defendant Jane Doe 7. *Id.* Plaintiff alleges,

> 43. The strip search and body cavity searches ordered by defendant Jane Doe 7 was conducted in the identical manner as the strip search and body cavity search conducted as the strip search and body cavity search the day before. Defendant Jane Doe 7 also kept the door in the cell in a fully opened position so that this second strip and body cavity search was also observed by all persons, male and female, who walked by the door of the cell.

1    *Id*. ¶ 43.  The complaint does not state the amount of time that passed between the time charges

2    were dismissed and plaintiff's release.

3        Plaintiff has sued defendants Gregory J. Ahern, Sheriff for Alameda County; Brett M.

4    Keteles, Assistant Sheriff for Alameda County in charge of the Detentions and Corrections Unit in

5    that county; Carla Kennedy, second in command for Detention and Corrections; David Brady and

6    C. Staysa, captains of the Alameda County Sheriff's Office; and the County of Alameda.  *See id.*

7    at ¶¶ 10-14.  The named defendants are sued in their official capacities.  *Id*.  Plaintiff also sues

8    Does 5-50, who were all Sheriff's deputies assigned to detentions and corrections and were on

9    duty between June 16, 2014 and July 3, 2014.  *Id*. at ¶ 15.  The Doe defendants are sued in their

10   official and individual capacities.  *Id*. at ¶ 16.

11       The FAC alleges the following claims pursuant to 42 U.S.C. § 1983 and state law: (1)

12   violation of the Eighth Amendment's prohibition against cruel and unusual punishment based on

13   the deprivations she suffered while in custody; (2) violation of the Eighth and Fourteenth

14   Amendments based on her placement in administrative isolation; (3) retaliation based upon the

15   exercise of her First Amendment rights; (4) violation of the Fourth Amendment and Equal

16   Protection clause of the Fourteenth Amendment with respect to the timing and location of the strip

17   and body cavity searches; (5) violation of Article 1, § 1 of the California Constitution and

18   California Civil Code § 51.7; (6) violation of the Fourth, Eighth, and Fourteenth Amendments

19   based on defendants' failure to immediately release plaintiff after the charges against her were

20   dismissed; (7) violation of California Civil Code § 52.1; and (8) negligence.[3]  Plaintiff requests

21   monetary damages as well as injunctive relief requiring defendants to provide the putative class of

22   "female individuals who are arrested and placed in the custody of the Alameda County Sheriff's

23   Office . . . jail and held by the Sheriff in solitary confinement in Santa Rita Jail while under

24   pretrial detention" with "constitutionally adequate" cells and conditions of incarceration or

25

26   _____

27       [3] Plaintiff filed her complaint on behalf of herself and as representative of a putative class
     of "female individuals who are arrested and placed into the custody of the Alameda County
     Sheriff's Office ("Sheriff") jail facility and held by the Sheriff in solitary confinement in Santa

28   Rita Jail while under pretrial detention."  Dkt. No. 25 at ¶ 1.

United States District Court
Northern District of California

detention, a halt to "abusive behavior and conduct," the cessation of First Amendment retaliation against those speak out against "defendants' unlawful treatment," and an end to administrative isolation of pretrial detainees. *Id*. at ¶¶ 1, 6-7.

Now before the Court is defendants' motion to dismiss the FAC.[4]

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Furthermore, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.) *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).  If the Court dismisses the complaint, it must then decide whether to grant leave to amend.  The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

_____

[4] Plaintiff filed the original complaint *pro se*, and then she obtained an attorney who filed the first amended complaint.

United States District Court
Northern District of California

Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I.  Claim 1: Violation of the Eighth Amendment

Plaintiff alleges that the deprivations she suffered while detained at Santa Rita Jail amount to cruel and unusual punishment in violation of the Eighth Amendment.  Dkt. No. 25 at ¶ 59. Plaintiff alleges that she was deprived of "basic human hygiene needs including toilet paper, soap, clean clothing, clean underwear, showers and other accoutrements of a minimum of personal hygiene and cleanliness."  *Id.* at ¶ 60.  Defendants move to dismiss this claim, arguing that the Eighth Amendment applies only to convicted prisoners.

Plaintiff alleges that she was a pretrial detainee throughout her June - July 2014 detention. When a pretrial detainee challenges conditions of his confinement, the proper inquiry is whether the conditions amount to punishment in violation of the Due Process Clause of the Fourteenth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).  "'[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent guarantee is the Due Process Clause of the Fourteenth Amendment.'"  *Id.* (quoting *Ingraham v. Wright*, 430 U.S. 651, 671-72 n.40 (1977)).

Accordingly, the Court GRANTS defendants' motion to dismiss Velarde's Eighth Amendment claim.  However, the Court grants plaintiff leave to amend the complaint to allege a claim for violation of her rights under the Fourteenth Amendment.  *See generally Bell*, 441 U.S. at 538 (discussing "useful guideposts in determining whether particular restrictions and conditions accompanying pretrial detention amount to punishment in the constitutional sense of that word"); *Demery v. Arpaio*, 378 F.3d 1020, 1028-29 (9th Cir. 2004); *Keenan v. Hall*, 83 F.3d 1083, 1090-91 (9th Cir. 1996), *amended*, 135 F.3d 1318 (9th Cir. 1998); *Toussaint v. McCarthy*, 597 F. Supp.

United States District Court
Northern District of California

6

1388, 1411 (N.D. Cal. 1984), *aff'd in part and vacated in part*, 801 F.2d 1080 (9th Cir. 1986).[5]

## II.     Claim 2: Violation of Eighth and Fourteenth Amendments

Velarde alleges that she was placed in administrative isolation as punishment based on her request for a different judge in Judge Saunders' courtroom.  Dkt. No. 25 at ¶ 24.  She alleges that two deputies told her she would be punished for having made a "scene" in court, and that she would be placed in "the hole."  *Id.*

Defendants move to dismiss this claim, arguing that  plaintiff's allegations are "clearly contradicted" by the Superior Court's Clerks Docket and Minutes document dated June 18, 2014, which states: "Previous order of 6-16-14, defendant held at zero bail, is to not have any communications, no visitors and no telephone calls, (Has not accepted P.O.) remains in effect." Dkt. No. 34-1 at 2.   Defendants assert that the proposed protective order was pursuant to California Penal Code § 136.2, which "allows criminal courts to issue protective orders to protect witnesses and victims of domestic abuse."[6]  Dkt. No. 33 at 9:21-10:1, n.3.  Defendants do not provide any evidence in support of this assertion except for the Docket and Minutes document.

As discussed *supra*, as a pretrial detainee, plaintiff cannot bring this claim under the Eighth Amendment, and instead she must bring it under the Fourteenth Amendment.[7]  *Lee*, 250 F.3d at

---

[5]   In addition, the Court notes that the complaint does not specify which causes of action are brought against which defendants.  Plaintiff is directed to provide such clarification in the amended complaint.

[6]   Defendants do not cite the specific subsection of Cal. Penal Code § 136.2 to which they refer.  Based upon defendants' arguments, it appears that they are referring to subsection (a)(1)(D), which states:

> Upon a good cause belief that harm to, or intimidation or dissuasion of, a victim or witness has occurred or is reasonably likely to occur, a court with jurisdiction over a criminal matter may issue orders, including, but not limited to, the following:
> . . . .
> (D)  An order that a person described in this section shall have no communication whatsoever with a specified witness or a victim, except through an attorney under reasonable restrictions that the court may impose.

Cal. Penal Code § 136.2.

[7]   In her Opposition, Velarde requested leave to amend to allege a claim under the Fifth Amendment in place of the Eighth Amendment.  Dkt. No. 35 at 5:4-6.  However, "[w]here the

United States District Court
Northern District of California

686. Pretrial detainees may not be placed in disciplinary segregation without a due process hearing. *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996). Here, Velarde alleges that she was placed in "the hole" by defendants in order to punish plaintiff for making a "scene" in court. The Clerks Docket and Minutes do not "clearly contradict" plaintiff's allegations such that dismissal at the pleading stage is appropriate. The Court cannot draw the inference that the restrictions ordered by Judge Saunders -- that plaintiff was "not have any communications, no visitors and no telephone calls" -- necessarily meant placing plaintiff in administrative segregation. Accordingly, the Court concludes that plaintiff has stated a claim for violation of her rights under the Fourteenth Amendment. Defendants' motion to dismiss plaintiff's second cause of action is GRANTED to the extent that plaintiff alleges a violation of her rights under the Eighth Amendment, and DENIED to the extent plaintiff alleges a violation of her rights under the Fourteenth Amendment.

### III. Claim 3: Violation of First Amendment - Retaliation

Plaintiff alleges that defendants retaliated against her by punishing her while she was in custody in response to her speaking up in court, inquiring about the rules of the Santa Rita Jail, requesting food and other basic necessities, and criticizing the actions and policies of government actors. Dkt. No. 25 at ¶ 69. Defendants argue that Velarde has not alleged sufficient facts to allege retaliation, and that her allegations of mistreatment at the hands of defendants are insufficient under current law.

To prove retaliation in violation of the First Amendment and to recover under 42 U.S.C. § 1983, a plaintiff must show:

> (1) [that] he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action.

State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Bell*, 441 U.S. at 441 U.S. at 5 n.16.

United States District Court
Northern District of California

*Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010); *Skoog v. Cnty. of Clackamas,* 469 F.3d 1221, 1232 (9th Cir. 2006) (applying same test, but with two instead of three elements).  To rise to a constitutional violation, the defendant's adverse action "must be of a nature that would stifle someone from speaking out."  *Blair*, 608 F.3d at 544.  Examples of adverse actions are "'exercise[s] of governmental power' that are 'regulatory, proscriptive, or compulsory in nature' and have the effect of punishing someone for his or her speech."  *Id.* (quoting *Laird v. Tatum*, 408 U.S. 1, 11 (1972)).  Furthermore, direct or circumstantial evidence can demonstrate that a defendant intended to inhibit free speech.  *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300-01 (9th Cir. 1999) (internal citations and quotations marks omitted).  Verbal harassment or abuse is "not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."  *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).

Plaintiff alleges that Santa Rita Jail deputies retaliated against her because she spoke up in court and because of her criticism of Oakland police.  *See* Dkt. No. 25 at ¶ 69.  Defendants argue that Velarde has not alleged sufficient facts to allege a retaliation claim "because no adverse action was taken against her as a result of her free speech," and her allegations of mistreatment at the hands of defendants are insufficient under current case law.  The Court finds that plaintiff has alleged an adverse action, namely placement in the "hole," as a result of her speech in Judge Saunders' courtroom.  *Blair*, 608 F.3d at 543.

The Court finds that plaintiff's remaining allegations of retaliation are insufficient.  Plaintiff generally alleges that she was "verbally abused, punished and denied the basics of humanitarian treatment."  Dkt. No. 25 at ¶¶ 2, 26, 30.  For example, plaintiff alleges that

> [w]hile at the beginning [of her detention], Plaintiff made one or two requests [for soap] of the sheriff deputies, it was soon made amply clear to Plaintiff, that any requests she made was treated as a form of 'non-cooperation', and all requests provoked the anger of sheriff's deputies, which resulted in some additional form of deprivation or punishment.  Therefore, Plaintiff quickly learned not to make any requests and to initiate few, if any verbal communications with the sheriff's deputies.

*Id.* at ¶ 26.  Plaintiff has not alleged with any specificity how the deputies retaliated against her in response to her requests for soap (or anything else).  Further, to the extent that plaintiff alleges

retaliation in the form of verbal mistreatment, those allegations do not state a constitutional violation. *See Oltarzewski*, 830 F.2d at 139.

The Court therefore DENIES defendants' motion to dismiss the retaliation claim to the extent this claim is based on plaintiff's her placement in administrative isolation, and GRANTS defendants' motion to dismiss the balance of the retaliation claim. The Court GRANTS plaintiff leave to amend the retaliation claim in order to allege specific facts showing that there was an adverse action taken against her by the deputies as a result of her exercise of free speech. *See Blair*, 608 F.3d at 543.

## IV.    Claim 4: Violation of the Fourth and Fourteenth Amendments

The fourth claim for relief alleges that defendants' "policies, practices, and customs regarding the strip and visual body cavity searches complained of herein violated the rights of Plaintiff . . . under the Fourth Amendment to be free from unreasonable searches and seizures [and violated plaintiff's right] to due process and privacy under the Fourteenth Amendment." Dkt. No. 25 at ¶ 73.

Defendants argue that this claim fails as a matter of law because strip searching upon returning a detainee to administrative isolation is constitutional. In support of this argument, defendants cite Supreme Court and the Ninth Circuit cases upholding strip and body cavity search policies as reasonable. *See Florence v. Bd. of Chosen Freeholders of City of Burlington*, 132 S. Ct. 1510 (2012); *Bull v. San Francisco*, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc); *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988); *Rickman v. Avaniti*, 854 F.2d 327, 328 (9th Cir. 1988); *but see Lopez v. Youngblood*, 609 F. Supp. 2d 1125, 1139-40 (E.D. Cal. 2009) (granting summary judgment in favor of plaintiffs, finding a policy of strip searching detainees ordered released by a court upon return to jail violates the Fourth Amendment); *Craft v. City of San Bernardino*, 468 F. Supp. 2d 1172, 1179 (C.D. Cal. 2006) (holding on summary judgment that a blanket policy of strip searching all detainees upon return from court, including detainees ordered released, violated the Fourth Amendment).

The Court concludes that plaintiff has stated a claim to challenge the strip searches. To

United States District Court
Northern District of California

1 determine whether a strip search is constitutional, courts must consider *inter alia* the scope,

2 manner and justification for the search. *Bull*, 595 F.3d at 974–75. This evaluation necessarily

3 involves an examination of the factual context, and the Court notes that the cases cited by

4 defendants were all decided at summary judgment on a full factual record. At the pleadings stage,

5 the Court cannot assess the reasonableness of the challenged strip searches. Defendants may

6 renew their arguments, including regarding qualified immunity, on a fuller factual record.

7      Defendants also argue that the named defendants, including the County, may not be held

8 vicariously liable for the strip searches because they were performed by Doe defendants (Jane

9 Does 6 and 7). Supervisors may be held liable in an individual capacity for their own culpable

10 action or inaction in the training, supervision, or control of their subordinates. *Menotti v. City of*

11 *Seattle*, 409 F.3d 1113, 1149 (9th Cir. 2005). Plaintiffs may hold a municipality liable if action

12 pursuant to official municipal policy caused the plaintiff's injuries. *Connick v. Thompson*, 131

13 S.Ct. 1350, 1359 (2011). Here, the complaint alleges that the named defendants were policy

14 makers with regard to the challenged conditions and policies at the jail.

15

16 **V.    Claim 5: Violation of California Civil Code § 51.7 (Ralph Civil Rights Act)**

17      Plaintiff's fifth claim for relief alleges a violation of California Civil Code § 51.7.[8] Dkt.

18 No. 25 at ¶¶ 74-77. The complaint incorporates all of the previous factual allegations, and alleges

19 that

20       Defendants' above-described violated Plaintiff's and class members' right to
      privacy as guaranteed by Article 1 § 1 of the California Constitution. At all

21       relevant times, Defendants' and more particularly Jane Does 6 and 7's individual
      and/or concerted conduct was unreasonable and without any lawful justification

22       and done with a conscious, callous and deliberate indifference to Plaintiff['s] . . .
      constitutional right to due process. In addition, the Jane Does were acting with

23       reckless disregard . . . by conducting a demeaning . . . strip and visual body cavity
      search that may be viewed by those outside the room.

24

25 *Id*. at ¶ 76.

26
        [8] The fifth claim for relief also alleges a violation of the California Constitution Article 1,

27 §1 Right to Privacy. Defendants' motion to dismiss does not specifically address this aspect of the
fifth cause of action, except to assert that defendants are immune from liability on the state law

28 claims. *See* Part VIII, *infra*.

Defendants move to dismiss plaintiff's claim for failure to state the elements of a § 51.7 claim.  California Civil Code § 51.7 states that persons within California have the right to be free from any "violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51 . . . ."  Cal. Civ. Code § 51.7(a).  At the time of plaintiff's detention, Section 51(b) provided that all people in California "are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation. . . ."  Cal. Civ. Code § 51.[9]  When claiming a violation of § 51.7, a plaintiff must show: "(1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's [protected characteristic]; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1167 (N.D. Cal. 2009), *amended in part* (Sept. 8, 2009) (citing *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 880-81 (2007).

Defendants argue that plaintiff has not alleged "that any of the Defendants, including Sheriff Ahern, the Defendant Deputies or Doe deputies threatened Plaintiff with violent acts or committed violent acts against Plaintiff.  Plaintiff merely alleges, generally, that she was verbally abused, punished, or ignored."  Dkt. No. 33 at 23:1-4.  Defendants also contend that "[t]he alleged verbal harassment by the Doe deputies, even if taken as true, does not amount to threatening or committing a violent act sufficient to state a claim under" § 51.7.  *Id.* at 23:4-6.

Plaintiff's opposition argues that she "pled that all of her requests (for basic sanitation such as toilet paper) provoked 'the anger of sheriff's deputies, which resulted in additional deprivation and punishment.' . . . In this situation, where plaintiff is under the complete physical control of defendants, and where defendants have clearly informed her that they are punishing her and will punish her further, constitutes intimidation by threat of violence."  Dkt. No. 35 at 5:22-26 (internal citation omitted).  Plaintiff argues that the verbal abuse and threat of punishment were not "mere

[9] Section 51(b) was amended on January 1, 2016 to add to its list of protected groups people of any "citizenship, primary language, or immigration status."

United States District Court
Northern District of California

coercion of arrest, but intimidation by threat of violence" that she interpreted as a threat that the conditions of her detention would worsen.  Dkt. No. 35 at 6:3-5.

The Court finds that plaintiff has failed to allege a violation of § 51.7.  Plaintiff does not allege any facts regarding specific threats of violence made against her.  Plaintiff has not alleged that Doe defendants 6 and 7 threatened her with any violence when conducting the strip and body cavity searches.  With respect to the other defendants, plaintiff has not alleged any particular threats of violence, and instead the complaint generally alleges that defendants interpreted any requests from her as "non-cooperation," and that her requests "provoked the anger of sheriff's deputies," which would lead to some unspecified "additional form of deprivation or punishment."  Dkt. No. 25 at ¶ 26.  These allegations are insufficient to show a specific threat of violence.  *Compare Winarto v. Toshiba Am. Elecs. Components, Inc*., 274 F.3d 1276, 1290 (9th Cir. 2001) (holding statement "chick, you better walk faster or I am going to hurt you again" constituted a threat of violence under § 51.7) *with Ramirez v. Wong*, 188 Cal. App. 4th 1480, 1482, 1486 (2010) (no threat of violence when a landlord entered two female tenants' apartment in their absence to sniff their underwear because "[t]here can be no 'threat of violence' without some expression of intent to injure or damage plaintiffs or their property . . . .").

Accordingly, the Court GRANTS defendants' motion to dismiss the § 51.7 claim with leave to amend.  If plaintiff amends the § 51.7 claim, plaintiff must also allege the other elements of a § 51.7 claim, including that defendants were motivated by a perception of plaintiff's protected characteristic (as well as what that protected characteristic is).  *See Knapps*, 647 F. Supp. 2d at 1167.

## VI.     Claim 6: Violation of Fourth and Fourteenth Amendments

Plaintiff alleges that defendants violated her Fourth and Fourteenth Amendment rights by not releasing her immediately after the charges against her were dismissed.[10]  Dkt. No. 25 at ¶¶

---

[10]  Plaintiff also brings this claim under the Eighth Amendment.  For reasons previously discussed, this is improper and the Court dismisses this claim to the extent plaintiff alleges a violation of the Eighth Amendment.

United States District Court
Northern District of California

United States District Court
Northern District of California

80-82. Specifically, plaintiff alleges:

> 80. Defendants' policies, practices and customs regarding the release of pre-trial detainees who have been ordered release by the court, either through their Own Recognizance (OR), or dismissal of the pending charges or other basis, whereby instead of releasing said pre-trial detainees forthwith, force all pre-trial detainees to wait at court, sometimes for long periods of time, and then return to Santa Rita Jail, handcuffed, or shackled, or otherwise bound, is without any lawful justification and done with a conscious, callous and deliberate indifference to Plaintiff and class member's constitutional right to due process.

> 81. Defendants' policies, practices and customs regarding the release of pre-trial detainees who have been ordered release by the court, either through their Own Recognizance (OR), or dismissal of the pending charges or other basis, whereby all pre-trial detainees, upon returning to Santa Rita jail, instead of being processed forthwith and immediately released, are forced to undergo an unnecessary and unreasonable strip search and/or visual body cavity search.

*Id.* ¶¶ 81-82.

Defendants' motion to dismiss this claim focuses solely on plaintiff's allegations regarding strip and body cavity searches.  *See* Dkt. No. 33 at 19-20.  For the reasons set forth above, the Court finds that plaintiff has stated a claim with regard to the searches.  As defendants do not challenge the balance of this cause of action, the Court does not address those allegations.

## VII.   Claim 7: Violation of California Civil Code § 52.1 (Bane Civil Rights Act)

Plaintiff's seventh cause of action alleges a violation of California Civil Code § 52.1. Section 52.1 provides that an injured individual may bring a claim against a person who "interferes by threats, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a)-(b).  Section 52.1 does not require a showing that a defendant intended to discriminate, nor does it require a plaintiff to be part of a protected class.  *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 841-42 (2004).  To demonstrate a violation of § 52.1, a plaintiff must show: "(1) Defendants interfered with Plaintiffs' constitutional or statutory rights; and (2) that interference was accompanied by actual or attempted threats, intimidation, or coercion." *Campbell v. Feld Entm't, Inc.*, 75 F. Supp. 3d 1193, 1211 (N.D. Cal. 2014).  However, a plaintiff "need not allege that defendants acted with discriminatory animus or intent, so long as

those acts were accompanied by the requisite threats, intimidation, or coercion." *Venegas*, 32 Cal. 4th at 843.  Courts have held that where a defendant's actions are intentional, the Bane Act does not require threats, coercion, or intimidation independent from those inherent in the alleged constitutional or statutory violation.  *Cuviello v. City & Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1102 (N.D. Cal. 2013); *DV v. City of Sunnyvale*, 65 F. Supp. 3d 782, 787-88 (N.D. Cal. 2014); *Bass v. City of Fremont*, No. C 12–4943 TEH, 2013 WL 891090, at *5-6 (N.D. Cal. 2013); *Holland v. City of San Francisco*, No. C 10-2603 TEH, 2013 WL 968295, at *10 (N.D. Cal. Mar. 12, 2013).

Plaintiff does not specify in her complaint what conduct she alleges violated § 52.1.  The complaint realleges and incorporates by reference paragraphs 1 through 87, and then alleges that "defendants' above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with plaintiffs' enjoyment of rights secured by the Constitution and laws of the United States and the State of California, violating California Civil Code section 52.1." Dkt. No. 25 at ¶¶ 84-85.  In her opposition, plaintiff describes the basis for this claim as her "wrongful" placement in solitary confinement and defendants' "meting out the treatment she received." Dkt. No. 35 at 6:19-20.

Defendants contend that plaintiff cannot base the Bane Act claim on her placement in administrative isolation because Judge Saunders ordered that placement.  For the reasons stated above, the Court cannot conclude at this stage of the litigation that plaintiff's placement in administrative segregation was legal.  Plaintiff alleges that her placement was punitive, and as such, the Court finds that plaintiff has stated a claim under the Bane Act.  However, the Court also finds that to the extent plaintiff wishes to challenge other conduct by defendants in support of her Bane Act claim, plaintiff must specify that conduct and allege that that the conduct was intentional or accompanied by threats, coercion or intimidation.  Accordingly, the Court GRANTS in part and DENIES in part defendants' motion to dismiss the § 52.1 claim with leave to amend.

///

United States District Court
Northern District of California

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## VIII. Immunities for State Law Claims

### A.     County Immunity under California Government Code § 844.6

Defendant County asserts it is immune from liability under plaintiff's fifth, seventh and eighth causes of action[11] under Cal. Gov't. Code § 844.6.  "Government Code section 844.6(a)(2), subject to stated exceptions, provides that a public entity is not liable for '[a]n injury to any prisoner.'"  *Teter v. City of Newport Beach*, 30 Cal. 4th 446, 448 (2003); Cal. Gov't. Code §§ 844.6(a)-(a)(2), § 845.4, § 845.6.  For purposes of § 844.6, a "prisoner" includes a pretrial detainee.  Cal. Gov't. Code § 844.

Plaintiff argues that her claim is covered under an exception to § 844.6, which provides:

> Neither a public entity nor a public employee acting within the scope of his employment is liable for interfering with the right of a prisoner to obtain a judicial determination or review of the legality of his confinement; but a public employee, and the public entity where the employee is acting within the scope of his employment, *is liable for injury proximately caused by the employee's intentional and unjustifiable interference with such right*, *but no cause of action for such injury shall be deemed to accrue until it has first been determined that the confinement was illegal*.

Cal. Gov't. Code § 845.4 (emphasis added).  However, as defendants note, plaintiff does not allege that her arrest leading to her confinement was illegal, and thus this exception to § 844.6 immunity does not apply.  *See Ortiz v. Cty. of Sonoma*, No. 14-CV-00322-JSC, 2014 WL 1351843, at *2 (N.D. Cal. Apr. 4, 2014) (holding plaintiff must first establish that confinement was illegal before § 845.4 can apply); *see also Holland*, No. C 10-2603 TEH, 2010 WL 5071597, at *10-11 (holding § 844.6  provided immunity to City of San Francisco from the plaintiff's state law claims challenging strip search policy).

Accordingly, the complaint as currently framed does not establish any basis for finding that an exception to § 844.6 immunity applies.  As such, the Court finds that the County is entitled to immunity under § 844.6 to plaintiff's state law claims.  If plaintiff is able to allege a factual basis for an exception to such immunity, plaintiff may do so in the amended complaint.

---

[11]  In addition to the fifth and seventh causes of action discussed *supra*, the complaint alleges an eighth cause of action for negligence.

16

**B.      Sheriff Ahern and Defendant Deputies' Immunity under California Government Code § 820.2 and § 820.8**

Defendants contend that Sheriff Ahern and the defendant deputies are immune from liability under plaintiff's state law claims pursuant to California Government Code §§ 820.2 and 820.8 because plaintiff does not allege that these individual defendants personally engaged in any threats, intimidation or coercion of plaintiff, nor does plaintiff allege that these defendants were personally involved in the strip searches.  Government Code § 820.2 provides immunity for discretionary, policymaking acts, and Government Code § 820.8 provides immunity for actions of other public employees, including subordinates.  *See Holland*, No. C 10-2603 TEH, 2010 WL 5071597, at *11-12 (holding defendant sheriff immune from liability under state law under section 820.2 where "Holland does not allege that Sheriff Hennessey had any role in Holland's strip search beyond setting the policy. . . .  Thus, while Holland may be correct that the deputies who searched her are not immune under section 820.2, she cites no authority that would withdraw immunity from the policymaker simply because his or her policy was carried out.");   *Weaver v. State of Cal.*, 63 Cal. App. 4th 188, 202 (1998) ("Government Code section 820.8 affords [CHP Commissioner] immunity from liability based on the acts of his subordinates, Johnson and Flores.").

Plaintiff's opposition does not specifically address most of defendants' arguments.  Plaintiff argues that Cal. Penal Code § 4030[12] overrides § 820.2 immunity, and that the facts of the complaint demonstrate that defendants violated § 4030.  She is mistaken.  In *Caldwell*, the court found that "where the immunity provided by section 820.2 would otherwise apply, that immunity cannot be abrogated by a statute which simply imposes a general legal duty or liability on persons including public employees."  10 Cal. 4th at 986.  Furthermore, even if an employee was liable under the statute for his or her actions, the immunity granted by § 820.2 does not disappear, because this "effect can only be achieved by a clear indication of legislative intent that statutory immunity is withheld or withdrawn in the particular case."  *Id.*; *see Holland*, No. C 10–2603 TEH,

---

[12]    Cal. Penal Code § 4030(l) provides that strip and body cavity searches "shall be conducted in an area of privacy so that the search cannot be observed by persons not participating in the search."

2010 WL 5071597, at *11-12 (dismissing claim for violation of strip search regulations brought under Cal. Penal Code § 4030(l) against city and sheriff based on immunity); *see also Bull*, 758 F. Supp. 2d at 935 (finding public entity is immune from liability based on an illegal strip search).

Accordingly, the Court finds that as currently pled, the named individual defendants are entitled to immunity under California Government Code §§ 820.2 and 820.8 because plaintiff does not allege that these individual defendants personally engaged in any threats, intimidation or coercion of plaintiff, nor does plaintiff allege that these defendants were personally involved in the strip searches.  If plaintiff is able to allege that any of the named individual defendants were personally involved in the alleged violations, plaintiff may do so in the amended complaint.[13]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS in part and DENIES in part defendants' motion to dismiss and GRANTS plaintiff leave to file an amended complaint consistent with this order no later than **April 29, 2016**.

**IT IS SO ORDERED**.

Dated: April 20, 2016

SUSAN ILLSTON
United States District Judge

---

[13]   In light of this disposition, the Court finds it unnecessary to address the parties' remaining arguments regarding immunity.